IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEANNETTE HURDLE** | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **FAIRBANKS CAPITAL** | : | |
| **CORPORATION, et al.** | : | |
| Defendants. | : | NO. 02-2788 |

Reed, S.J.                                                                                         September 17, 2002

### MEMORANDUM

Presently before this Court is the motion of defendant NationsCredit Financial Services Corp. ("NationsCredit") to dismiss plaintiff Jeannette Hurdle's ("Ms. Hurdle") claims and compel arbitration (Document No. 9), the plaintiff's response (Document No. 10), the defendant's reply (Document No. 15) and plaintiff's sur-reply thereto (Document No. 17). For the reasons set forth below, the defendant's motion will be denied without prejudice.

*Background*

On July 7, 1999, Ms. Hurdle took out a loan for $39,975.00 from WMC Mortgage Corp. ("WMC") against the equity in her home. The loan was subsequently assigned to defendant NationsCredit. Plaintiff, a 66-year old single female, alleges that she took out the loan to pay property taxes and other household expenses. (Am. Compl. ¶ 22.) She further alleges that at the time, she earned a limited income of approximately $246 per month from social security benefits, but that the loan application included the $977.50 monthly income that her 87-year old mother received in social security and pension benefits. (Id. at ¶¶ 16, 19, 30.) Ms. Hurdle's mother passed away, and plaintiff's response papers represent that she defaulted on her loan payments and defendant initiated foreclosure proceedings on her home. Plaintiff instituted this action

alleging various federal and state law violations in relation to the loan, including violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. Upon representation of her financial condition, the Court has granted Ms. Hurdle leave to proceed in forma pauperis. (Doc. No. 2).

Defendant NationsCredit now moves to compel arbitration of this action under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. At the closing of the loan transaction, Ms. Hurdle signed a separate document titled Agreement for the Arbitration of Disputes ("Arbitration Agreement"). The Arbitration Agreement provides in pertinent part that, "... if you and we are not able to resolve our differences informally, you and we agree that any dispute, regardless of when it arose, shall be settled, at your option or ours, by arbitration in accordance with this Agreement. . . . **IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A DISPUTE, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT DISPUTE IN COURT OR TO HAVE A JURY TRIAL ON THAT DISPUTE**. . . . " (bold and capitalized in original). Plaintiff does not dispute that she signed the Arbitration Agreement, nor does she contend that the claims asserted are beyond its scope. Instead, she maintains that Arbitration Agreement should not enforced for the following reasons: (1) the lender failed to sign the agreement; (2) lack of consideration; (3) due process violations of her constitutional rights; and (4) inability to vindicate her rights through arbitration because of its prohibitive costs.

*Legal Standard*

The standard of review on a motion to compel arbitration is derived from the standard used in resolving summary judgement motions pursuant to Federal Rule of Civil Procedure 56(c). See Trott v. Paciolla, 748 F. Supp. 305, 308 (E.D. Pa. 1990) (citing Par-Knit Mills v. Stockbridge Fabrics, 636 F.2d 51, 54 & n. 9 (3d Cir. 1980)); see also Varallo v. Elkins Park

Hosp., Civ. No. 01-785, 2002 U.S. Dist. LEXIS 4611, at **3-4 (E.D. Pa. March 19, 2002). Thus the moving party must provide through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [to] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party may not rely merely upon bare assertions, conclusory allegations, or suspicions. See Fireman's Ins. Co. v. Du Fresne, 676 F.2d 965, 969 (3d Cir. 1982). Under this standard, the Court will determine whether there is a genuine, factual question as to the applicability of the arbitration agreement to the claims asserted, considering the evidence in the light most favorable to the non-moving party. Par-Knit Mills, 636 F.2d at 54; Varallo, 2002 U.S. Dist. LEXIS 4611, at *4.

*Analysis*

**A. The FAA**

The parties do not dispute that the Arbitration Agreement is subject to the provisions of the FAA. The FAA elevates agreements to arbitrate to the same level of enforceability as other contracts, and "federal law presumptively favors enforcement of arbitration agreements." Harris v. Green Tree Financial Corp., 183 F.3d 173, 178 (3d Cir. 1999) (citations omitted). Pursuant to Sections 3 and 4 of the FAA, if there is a written agreement to arbitrate within the scope of the FAA, a federal court is authorized to compel the arbitration of any arbitrable claims. See id.; 9

U.S.C. §§ 3, 4.[1]  The FAA establishes a broad federal policy in favor of arbitration of disputes. Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Memorial Hospital v. Mercury Construction & Development Corp., 460 U.S. 1, 24-25 (1983) ("Unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute, the controversy will not be excluded from coverage of the arbitration clause.")

Normally, the Court would stay the proceedings if it determined that the parties had agreed in writing to arbitrate the issues contained in the underlying action. See 9 U.S.C. § 3. Nevertheless, NationsCredit has moved to dismiss the action upon an order for arbitration. The Third Circuit Court of Appeals has held that when "all claims involved in an action are arbitrable, a court may dismiss the action instead of staying it." Seus v. John Nuveen & Co., 146 F.3d 175, 179 (3d Cir. 1998) (citing Dancu v. Coopers & Lybrand, 778 F. Supp. 832, 835 (E.D. Pa. 1991), aff'd, 972 F.2d 1330 (3d Cir. 1992)).  If, conversely, the Court determines that the arbitration agreement will not be enforced, the case will not be dismissed.

---

[1] Section 3 of the FAA provides in relevant part,
If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.
9 U.S.C. § 3.

Section 4 of the FAA provides in relevant part,
A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for the agreement, would have jurisdiction . . . , for an order directing that such arbitration proceed in the manner provided for in such agreement.
9 U.S.C. § 4.

**B. Contract Execution**

Plaintiff initially argues that NationsCredit's predecessor in interest, WMC, failed to execute the Arbitration Agreement because no officer signed it on behalf of WMC. Because the agreement specifies that it would be "effective and binding on both [Ms. Hurdle] and [WMC] when it is signed by both parties," the plaintiff contends that WMC's failure renders the contract unenforceable. NationsCredit argues, however, that WMC did provide its signature by printing the name of the company at the bottom of the agreement. Defendant maintains that the agreement is therefore valid.

Although federal law governs the interpretation and construction of arbitration agreements, see Harris, 183 F.3d at 179, the court may look to state law "'if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.'" Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996) (quoting Perry v. Thomas, 482 U.S. 483, 493, n. 9, 96 L. Ed. 2d 426, 107 S. Ct. 2520 (1987)); see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). The Arbitration Agreement expressly provides that the law of Pennsylvania, as the state in which Ms. Hurdle's property is located, governs the agreement. (Arbitration Agreement, at 1). Consequently, I will look to Pennsylvania law to determine whether the Arbitration Agreement is valid.

Under Pennsylvania law, "there is no requirement in the Statute [of Frauds] of the decisional law that a signature be in any *particular* form." Hessenthaler v. Farzin, 388 Pa. Super. 37, 43, 564 A.2d 990 (Pa. Super. 1989) (emphasis in original). "Instead, the focus has been on whether there is some reliable indication that the person to be charged with performing under the

5

writing intended to authenticate it." Id. Under the Uniform Commercial Code as adopted in Pennsylvania, the term "signed" is defined to include "any symbol executed or adopted by a party with present intention to authenticate a writing." 13 Pa. C. S. § 1201. The Official Comment to the Commercial Code observes,

> Authentication may be printed, stamped or written; it may be by initials or by thumbprint. It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead. No catalog of possible authentications can be complete and the court must use common sense and commercial experience in passing upon these matters. The question always is whether the symbol was executed or adopted by the party with present intention to authenticate the writing.

Uniform Commercial Code, § 1-209(39), cmt. 39 (1990). Additionally, although the existence of blank signature lines below a corporation's printed name may indicate that the printed name was not intended to be a signature, see Pollin v. Mindy Mfg. Co., Inc., 211 Pa. Super. 87, 236 A.2d 542 (1967), the absence of signature lines following the corporate name indicates the contrary. See Jacoby Transp. Sys., Inc. v. Continental Bank, 277 Pa. Super. 440, 448, 419 A.2d 1227 (Pa. Super. 1980) (checks with no signature lines below corporate name are negotiable).

In this instance, the Arbitration Agreement was prepared by WMC, who provided it to Ms. Hurdle for her signature. I observe because WMC prepared the agreement, it is a permissible inference that the company would desire to adopt it. At the bottom of the last page of the Arbitration Agreement, Ms. Hurdle signed the contract on behalf of herself and her mother. Under the lines in which Ms. Hurdle signed the agreement, the names of Ms. Hurdle and her mother are typed out neatly. Following the two signatures by Ms. Hurdle, there are four blank signature lines, and then a longer line over which "WMC MORTGAGE CORP." is set out in typed block letters. The name of WMC is typed in a similar typeset as that in which the names

of Ms. Hurdle and her mother are printed, but was placed above the final line of the contract, rather than below the line. I find that the placement of the name reflects an intention by WMC for its typed name to constitute its signature authenticating the agreement. I therefore conclude that the Arbitration Agreement is not invalid for lack of execution.

**C. Consideration and Mutuality**

Plaintiff next contests the validity of the Arbitration Agreement for lack of consideration and mutuality. Ms. Hurdle maintains that although the contract appears to obligate both parties to arbitrate all disputes, it carves out exceptions regarding the remedies for the collection of her debt that benefit only the lender. Plaintiff argues therefore that the lender's obligation to arbitrate is illusory. Nevertheless, the Third Circuit Court of Appeals has firmly rejected a need for mutuality of obligations to enforce an arbitration contract. See Harris, 183 F.3d at 180 (enforcing arbitration clause giving lender option to litigate arbitrable issues and requiring borrower to invoke arbitration). Indeed, the Third Circuit Court of Appeals has approved the proposition that as long as the underlying agreement is supported by consideration, parties to an arbitration agreement need not bind each other equally. Id. at 180-181. Consequently, the inequality of the parties' obligations by itself does not render the Arbitration Agreement unenforceable for lack of consideration. In addition to the lender's obligation to arbitrate issues outside of those dealing with the collection of Ms. Hurdles' debt, the Arbitration Agreement provides that it was made "in consideration of [the lender's] processing of [Ms. Hurdle's] inquiry or application for a loan. . . . [and] in further consideration of [the lender's] funding of the loan. . . ." (Arbitration Agreement, at 1). I find that there was sufficient, if unequal, consideration to support the Arbitration Agreement, and therefore conclude that it is not invalid for lack of consideration.

**D. Due Process Violation**

Plaintiff alleges in her amended complaint that Ms. Hurdle did not see, nor was she given time to review, the loan documents and arbitration agreement prior to signing them. (Am. Compl., ¶ 113.) She further alleges that she was not informed that she was signing an arbitration agreement. (Id. at ¶¶ 115-16.) Her response brief additionally notes that even had she read the agreement, she would not have understood its implications in light of her experience and level of education.[2] Thus, Ms. Hurdle maintains that she did not knowingly or voluntarily agree to arbitrate any claims. Plaintiff creatively posits that enforcing the Arbitration Agreement would violate her due process rights by taking away her constitutional right to access to the courts, to have a trial jury and to confront and examine adverse witnesses.

Enforcement of a valid agreement to arbitrate does not deny a litigant their constitutional right of access to the courts. See Kerr v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 87-CV-3223, 1987 U.S. Dist. LEXIS 5363, at *8 (E.D. Pa. June 22, 1987) (citing Prima Paint Corp. v. Flood and Cooklin Mfg. Co., 388 U.S. 395 (1966)). Ultimately, plaintiff doesn't challenge the established principle that a party can validly waive her right to litigate, but only contests the standard by which a waiver is measured. Specifically, plaintiff argues that defendant must prove that Ms. Hurdle made a knowing and voluntary waiver of these constitutional rights, and that such waiver cannot be presumed.

The standard by which the Court determines whether a party waived a right to litigate need not be as rigorous as the standard in measuring the waiver of right to counsel. See

---

[2] According to the amended complaint, plaintiff has a high school diploma and a one-year degree in practical nursing, has not had full-time employment since 1972, has no experience in real estate finance, and has never previously had a mortgage. (Am. Compl. at ¶ 18.)

Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, 170 F.3d 1, 18 (1st Cir. 1999) (noting "open question" as to whether same standard should apply).

> The constitutional right of an accused to be represented by counsel, invokes, of itself, the protection of a trial court, in which the accused – whose life or liberty is at stake – is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.

Johnson v. Zerbst, 304 U.S. 458, 465, 82 L. Ed. 1461, 58 S. Ct. 1019 (1938). In contrast, in waiving the right to litigate, "a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985). Thus, the difference in the rights being waived permits a less rigorous inquiry in the review of arbitration agreements.

The Third Circuit Court of Appeals has already determined the standard governing whether a party has agreed to arbitrate, and has resoundingly rejected a heightened "knowing and voluntary" standard. See Seus v. John Nuveen & Co., 146 F.3d 175, 183-184 (3d Cir. 1998), cert. denied, 525 U.S. 1139, 143 L. Ed. 2d 38, 119 S. Ct. 1028 (1999). With regard to the waiver of a right to proceed in a judicial forum, the Court need not inquire into "such matters as the specificity of the language of the agreement, the plaintiff's education and experience, plaintiff's opportunity for deliberation and negotiation, and whether plaintiff was encouraged to consult counsel." Id. at 183; see also Blocker v. Providian Life & Health, 99-CV-2201, 2001 U.S. Dist. LEXIS 400, at *5, n.3 (E.D. Pa. Jan. 3, 2001). Instead, the Court may rely on "ordinary, well established principles of contract law." Seus, 146 F.3d at 184, n. 2.

Under Pennsylvania law, "[c]ontracting parties are normally bound by their agreements,

without regard to whether the terms thereof were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains." Simeone v. Simeone, 525 Pa. 392, 400, 581 A.2d 162 (1990) (citing Standard Venetian Blind Co. v. American Empire Ins. Co., 503 Pa. 300, 305, 469 A.2d 563 (1983) (failure to read a contract does not warrant avoidance or nullification of its provisions)). Although a party can avoid an arbitration clause if she specifically alleges that the clause was the product of fraudulent inducement, see Prima Paint Corp., 388 U.S. at 403-04, plaintiff must do so with specificity. See Central Reserve Life Ins. Co. v. Marello, 00-CV-3344, 2000 U.S. Dist. LEXIS 14405, at **8-9 (E.D. Pa. October 4, 2000). Ms. Hurdle has not specifically alleged fraudulent inducement of the arbitration agreement. Additionally, the failure to highlight relevant language in the contract "neither amounts to fraud nor justifies avoiding the arbitration clause." Id. at *9. Having signed the agreement, the party is charged with having read it. Id. (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 903 n.7 (3d Cir. 1997)). Ms. Hurdle cannot avoid the agreement by claiming now that she was unaware of what she was signing.

      Moreover, I observe that plaintiff has failed to submit any affidavit affirming that she did not knowingly and voluntarily sign the Arbitration Agreement, nor affirming that she would not have signed the agreement had she understood its terms. Under the standard governing motions to compel arbitration, as with the standard governing motions for summary judgment, plaintiff cannot rely upon "bare assertions, conclusory allegations, or suspicions." See Fireman's Ins. Co., 676 F.2d at 969. I conclude that plaintiff has failed to show that there is a genuine, factual question as to whether she has agreed to arbitrate her claims. Consequently, I further conclude that enforcement of this agreement would not violate her due process rights.

**E. Prohibitive Costs**

Finally, Ms. Hurdle seeks to avoid the agreement based on the prohibitive costs involved in arbitrating her claims. Enforcement of arbitration agreements is "only appropriate 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum' allowing the statute to serve its purpose." Blair v. Scott Specialty Gases, 283 F.3d 595, 607 (3d Cir. 2002) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28, 114 L. Ed. 2d 26, 111 S. Ct. 1647 (1991)) (alteration in original). The Supreme Court indicated that "the existence of large arbitration costs could preclude a litigant such as [plaintiff] from effectively vindicating her federal statutory rights in the arbitral forum." Green Tree Financial Corp. v. Randolph, 531 U.S. 79, 90-91, 148 L. Ed. 2d 373, 121 S. Ct. 513 (2000) (holding plaintiff failed to show costs of arbitration were prohibitive where agreement silent on allocation of costs or designation of specific arbitration association). The "initial burden of proof [is] on the party resisting arbitration to demonstrate that arbitration would be prohibitively expensive by showing 'the likelihood of incurring such costs.'" Blair, 283 F.3d at 607 (quoting Green Tree, 531 U.S. at 92). The claimant must come forward with some evidence to show that the projected fees would apply to the specific arbitration in question. Id. at 607. The burden of proof is then shifted to the moving party to rebut the allegation that the claimant cannot afford the costs of arbitration. Id. at 607-08.

In this action, the Arbitration Agreement provides that the American Arbitration Association ("AAA") would administer any arbitration arising under the agreement pursuant to its Commercial Arbitration Rules. The agreement further provides as follows:

> If either party . . . fails to submit to arbitration following a proper demand to do so, that party shall bear all costs and expenses, including reasonable attorney's

11

>fees, incurred by the other party compelling arbitration. In all other situations, each party . . . shall each bear its own costs and expenses, including attorney's fees, that that party incurs with respect to the arbitration.

(Arbitration Agreement at 1). In her response, plaintiff has submitted a copy of the AAA Commercial Arbitration Rules ("AAA Rules") (Pl. Exh. A).[3] According to the AAA Rules, when filing her claim, plaintiff must pay in full a filing fee of $ 750.00, based on the amount of her claim, which plaintiff has represented in her response is limited to the $61,000 appraised value of her home. (Pl. Exh. A at 30.) Although the AAA Rules provide that a claimant may apply for a fee deferral or reduction based on "extreme hardship," they do not provide any formal standards or guidelines as to how a claimant may qualify. Moreover, the AAA Rules do not provide a parallel "extreme hardship" fee deferral of the arbitrators' fees, which under the Arbitration Agreement, Ms. Hurdle is to bear.

Plaintiff has not submitted papers concerning the arbitrator's likely fees, and under the guidance of the Third Circuit Court of Appeals, the Court may order the parties to undergo limited discovery on this issue. Blair, 283 F.3d at 608-09. Nevertheless, I find that further discovery on this matter would be unnecessary. The Court has already determined that her financial condition prevented Ms. Hurdle from paying the $150 filing fee required to institute litigation, and has granted her in forma pauperis status accordingly. "[N]othing in Green Tree requires courts to undertake detailed analyses of the household budgets of low-level employees to

---

[3] Plaintiff has also submitted the Supplementary Procedures for Consumer-Related Disputes ("Supplementary Procedures"), effective March 1, 2002 (Pl. Exh. D). The Supplementary Procedures apply "whenever the [AAA] or its rules are used in an agreement between a consumer and a business." (Pl. Exh. D at 4.) The definition of "consumer" is "someone who buys or leases good or services, or contracts to buy or lease goods or services." (Id. at 2.) Although defendant has not addressed this point, the relationship between Ms. Hurdle and NationsCredit is one of a borrower and a lender, and not of a consumer and a business. Thus, the Supplementary Procedures do not apply in this instance.

conclude that arbitration costs in the thousands of dollars deter the vindication of employees' claims in arbitral fora." Giordano v. Pep Boys – Manny, Moe & Jack, Inc., 99-CV-1281, 2001 U.S. Dist. LEXIS 5433, * 24 (E.D. Pa. March 29, 2001). Consequently, I find that in light of plaintiff's financial straits, the responsibility for the costs and expenses of arbitration, including the arbitrator's fees, as well as the initial filing fee, would act as a barrier to plaintiff's pursuit of the arbitration of her claims. See id. at **24-25 (striking cost-sharing provision); see also Spinetti v. Service Corp. Int'l, 01-CV-1191, 2001 U.S. Dist. LEXIS 23959, at **10-14 (W.D. Pa. Nov. 15, 2001) (citing cases); Camacho v. Holiday Homes, Inc., 167 F. Supp. 2d 892, 896-97 (W.D. Va. 2001).

Upon this finding, the burden shifts back to the moving party to show that the costs would not be prohibitively expensive. NationsCredit counters plaintiff's argument by noting that because the AAA Rules permit an arbitrator to allocate expenses in an award, the arbitration costs are speculative, citing to Dabney v. Option One Mortgage Corp., 00-CV-5831, 2001 U.S. Dist. LEXIS 4949, **9-10 (E.D. Pa. Apr. 19, 2001). Nevertheless, under this logic, all costs associated with arbitration would be dependent upon the actual arbitral award granted, rendering moot any inquiry into costs at the stage of a motion to compel arbitration. In light of the guidelines set forth in Green Tree and Blair regarding the inquiry into costs, this conclusion is untenable. Additionally, Dabney is distinguishable from this action, as the plaintiff in Dabney had not sought in forma pauperis status, and thus the costs associated with litigation and arbitration for Dabney were similar.

I conclude that NationsCredit has not adequately met its burden to show that the arbitration costs would not prohibit Ms. Hurdle from vindicating her statutory rights. Nor has

13

defendant offered to pay the filing fee or arbitrator's fees, as suggested by the Third Circuit Court of Appeals. Blair, 283 F.3d at 610. I thus conclude that on the present record, the arbitration agreement is unenforceable because the associated costs would functionally prevent plaintiff from vindicating her statutory rights. I will therefore deny the instant motion.

Nevertheless, in light of the federal policy to uphold arbitration agreements and because the agreement in this action would be enforceable absent the associated costs, the motion will be denied without prejudice. I will grant leave to NationsCredit to file an amended motion limited to this issue, should defendant agree to bear the costs and fees of arbitration chargeable to plaintiff under the AAA Rules, excluding the costs and fees that Ms. Hurdle would be obligated to pay in litigation regardless of her in forma pauperis status.

*Conclusion*

Based on the foregoing findings and conclusions, this Court will deny without prejudice the motion of defendant NationsCredit to dismiss Ms. Hurdle's claims and compel arbitration.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEANETTE HURDLE** | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **FAIRBANKS CAPITAL CORPORATION, et al.** | : | |
| | : | |
| Defendants. | : | NO. 02-2788 |

## ORDER

**AND NOW**, on this 17th day of September, 2002, upon consideration of the motion of defendant NationsCredit Financial Services Corp. ("NationsCredit") to dismiss plaintiff Jeanette Hurdle's claims and to compel arbitration (Document No. 9), the plaintiff's response (Document No. 10), the defendant's reply (Document No. 15) and plaintiff's sur-reply thereto (Document No. 17), and for the reasons set forth in the foregoing memorandum, it is hereby **ORDERED** that the motion of defendant is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that, no later than October 21, 2002, NationsCredit may file an amended motion to dismiss the amended complaint and compel arbitration based upon the instructions in this Order and the foregoing memorandum.

_____

**LOWELL A. REED, JR., S.J.**